# United States District Court
### for the
### Western District of New York

May 1, 2015

United States of America

v.

Case No. 15-M-34

David Medina

*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of April 30, 2015, in the County of Erie, in the Western District of New York, the defendant did possess with intent to distribute heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

MICHAEL AMBROSIA
Special Agent
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 1, 2015

*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State: Buffalo, New York

# AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF ERIE    ) SS:
CITY OF BUFFALO   )

I, MICHAEL AMBROSIA, being duly sworn, deposes and says as follows:

1. I am employed as a Special Agent with United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), within the Department of Homeland Security ("DHS"). I have been employed as a Special Agent with HSI since June 2008. As part of my duties, I have investigated offenses within the jurisdictional authority of HSI, including crimes related to narcotics smuggling and money laundering. I have been responsible or have participated in the investigation and prosecution of cases involving large scale heroin, cocaine, ecstasy and marijuana distribution organizations. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used and how drug traffickers use other persons and/or their personal property to facilitate their illegal activities.

2. I make this affidavit in support of a Criminal Complaint against DAVID MEDINA, charging him with a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute heroin, a Schedule I controlled substance). Because this Affidavit is being submitted for the limited purpose of securing a

criminal complaint, I have not included every fact known to me concerning this investigation.

3. Your Affiant states that this investigation is being conducted by HSI Special Agents, and other law enforcement personnel assigned to the HSI Buffalo Division – Border Enforcement Security Task Force (HSI-BEST). Your Affiant is fully familiar with the facts and circumstances of this investigation, as a result of my participation in this investigation, information and/or reports provided to your Affiant by law enforcement personnel of the HSI-BEST, the Drug Enforcement Administration (DEA), and other law enforcement agencies, information provided by confidential sources, physical surveillance, my review of records and checks of various public and law enforcement data bases, and other information developed as a result of investigative techniques employed in this investigation.

4. Beginning in or around September, 2013, an investigation was initiated by HSI Buffalo and the Buffalo Resident Office of the DEA into the narcotics distribution activities of an individual identifying himself as DAVID MEDINA, a/k/a "Flaco" (hereinafter, "MEDINA"). During this investigation, a Confidential Informant (hereinafter, "CI"), provided information to law enforcement officers that MEDINA was willing to sell two (2) ounces of cocaine for $2700.00. I have reviewed an HSI Report of Investigation which reflects that at the direction and under the control of law enforcement officers, the CI engaged in series of consensually monitored and recorded telephone calls between the CI and MEDINA regarding the sale of cocaine as described above.

5.  I have also reviewed reports prepared by an HSI Special Agent which reported that on September 25, 2013, at the direction and under the control of law enforcement officers, the CI was used to conduct a controlled purchase of cocaine at 62 York Street, in Buffalo, NY, which is in the Western District of New York. On September 25, 2013, the CI, who had been provided a recording device by law enforcement, met MEDINA, and gave MEDINA $2700.00 (OAF) in exchange for approximately 90.76 grams of cocaine, and a recording of this controlled drug transaction was saved to a disc for placement into DEA evidence.

6.  Your Affiant has been advised by HSI SA Leroy Oswald that confidential source information and information from records and database checks reflects MEDINA was born in the Dominican Republic, not Puerto Rico, as MEDINA has claimed. Further, it appears that MEDINA is using the identity of a Puerto Rican born United States citizen to gain immigration benefits within the United States. Further investigation is being conducted to verify whether MEDINA enjoys status in the United States, and the nature of that status, if any.

7.  The investigation continued with respect to MEDINA, and in particular regarding his immigration status in the United States and his drug-trafficking/distribution activities. As reported to your undersigned, the CI and MEDINA engaged in several telephone conversations, which were not recorded, concerning MEDINA's immigration status, as well as MEDINA's involvement in heroin and cocaine distribution in the Buffalo, NY area.

8.  On April 29, 2015, at the direction of law enforcement, the CI telephoned MEDINA outside the presence of law enforcement. According to the CI, they spoke regarding a trip to the Dominican Republic and the CI made arrangements to meet MEDINA in the City of Buffalo, and for MEDINA to bring one-hundred (100) grams of heroin to sell to another individual. Essentially, the CI arranged to middle the 100 grams of heroin drug transaction between MEDINA and the unidentified individual. The CI arranged to meet MEDINA to conduct the drug transaction at an agreed upon location in the City of Buffalo at 12:00 PM on April 30, 2015.

9.  On April 30, 2015, your undersigned and other law enforcement officers met the CI, and provided a recording device to the CI. At approximately 12:00 PM, your Affiant and other members of law enforcement initiated physical surveillance in and around the pre-determined meet location. At approximately 1:06 PM, surveillance observed a silver sedan arrive at the meet location, occupied by two males, and MEDINA was observed entering the meet location. The CI advised your undersigned that MEDINA was one of the males, and thereafter, the CI and MEDINA met, as reflected in a consensually recorded conversation, and the CI and MEDINA discussed purchasing quantities of narcotics and the prices of those narcotics. During that recorded conversation, MEDINA stated, in sum and substance, that he would sell grams of ninety (90) percent pure heroin at $110.00 per gram. At approximately 1:22 PM, the silver sedan left the meet location followed by surveillance, and the vehicle drove to 2 Mariner Towers, Buffalo, NY. During the debriefing, the CI stated to your Affiant that MEDINA said he would return in approximately one-half hour with one-hundred (100) grams of heroin, and that MEDINA stated that he was from

"Bani", which is a town in the Dominican Republic. Based on this information, I believe that MEDINA was telling the CI that he was born in the Dominican Republic, not Puerto Rico, and accordingly is not a citizen of the United States.

10. At approximately 3:12 PM on April 30, 2015, the CI advised your Affiant that MEDINA had returned to the area of the meet location, and had the heroin with him. A surveillance team was dispatched to the meet location, and at approximately 3:25 PM HSI Supervisory Special Agent Douglas Turton and HSI-BEST Task Force Officer (TFO) Phillip Rhoney approached MEDINA, and identified themselves as police. During the initial encounter, TFO Rhoney questioned MEDINA if he had any weapons, things that would poke an officer or had anything illegal on him. MEDINA replied that he did not. TFO Rhoney then began a pat-down of MEDINA for weapons for officer safety, at which point MEDINA said that he had something illegal in his front pocket. During the pat-down search, law enforcement located a plastic bag, containing a baseball sized amount of a white powdery substance. The white powdery substance was field-tested and was positive for the presence of heroin, and the gross weight of the powder totaled 102.7 grams.

11. At approximately 3:32 PM on April 30, 2015, your Affiant and Special Agent Nasca advised MEDINA of his Miranda rights from a pre-printed Department of Homeland Security Miranda Rights form. When asked whether he speaks English, MEDINA stated that he had a ninth grade education, and understands, reads and writes some English. MEDINA stated that he could not read the Miranda rights form without his eyeglasses, which he did not have on his person. TFO Rhoney then advised MEDINA of

his Miranda rights in Spanish. MEDINA stated that he did not wish to acknowledge his Miranda rights until he knew what he was being charged with, and MEDINA then was transported to the BEST Office. After MEDINA arrived at the BEST office, Miranda warnings were read to him in Spanish, and at approximately 3:50 PM, MEDINA acknowledged his Miranda rights, both orally and in writing, and said that he would speak with the Agents. Thereafter, MEDINA stated, in sum and substance, that he was born in Puerto Rico, not the Dominican Republic, and that he found the narcotics in the yard where he was encountered by officers.

**WHEREFORE**, based on the foregoing, I respectfully submit that probable cause exists to believe that DAVID MEDINA has violated Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute a controlled substance).

*[signature]*
MICHAEL AMBROSIA
Special Agent
Homeland Security Investigations

Sworn to before me

this 1st day of May, 2015

*[signature]*
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge